## Henry C. Levi v. Robert L. Reid.

1.  EMPLOYER AND EMPLOYE—*Implied Contract for Extra Time.*— There is no implied promise on the part of an employer to pay extra compensation to one who is regularly employed and paid by the week or month, for work voluntarily performed outside of the usual hours of his employment.

2.  SAME—*Waiver of Claims for Extra Compensation for Overtime.* —Where an employe, by continuing his employment, working over the usual hours when requested, without protest, and receiving his stipulated wages weekly, knowing that his employer regards it as full payment for his week's work, accepts his employer's understanding of the contract as his own, he waives all claim to additional compensation.

Assumpsit, for services, etc. Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1899. Reversed. Opinion filed October 23, 1900.

Statement.—Appellee was employed by appellant as a salesman. He claims to have been hired and was paid at the rate of nine dollars per week. He was told by the manager of the store that it would open for business at a quarter to eight o'clock in the morning and close at half past six o'clock in the evening, except that Saturdays the hour of closing was ten o'clock. His employment began in June, 1894. In August following his wages were increased to $11 a week. He was required on a number of occasions to work after supper in the evening and several times on Sunday. In August, about the time his wages were increased, he began to keep a private account of the extra hours he was so employed. He was paid regularly every week, and signed receipts for his week's wages, saying nothing about any demand for overtime. He was paid in addition to the agreed salary certain amounts as premiums on sales, and was occasionally fined for not being on hand promptly at the hours for opening business. He left appellant's employ July 13, 1895, and was tendered his salary for that week and requested to sign a receipt in full. He refused to accept the $11 then due him for wages as in

full, and made a demand for an extra payment of thirty-three cents an hour for overtime as shown on his secret account. He recovered judgment, and appellant brings the case here.

DUPEE, JUDAH, WILLARD & WOLF, attorneys for appellant.

ELMER E. SCHMUCK, attorney for appellee; GEORGE S. BAKER, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is claimed by counsel for appellee that the latter was "engaged to work by the week during the hours the store was open," and is only "claiming compensation for services performed by him outside of the term of his employment." His own statement, however, does not bear out this view. Appellee testifies that the only conversation relating to the subject at the time of his employment was, an inquiry on his part as to the time of opening and closing, and a reply giving the information asked for. His testimony shows that he voluntarily worked over hours, without particular objection on his part, and without any new arrangement or contract. He said and did nothing to give his employer an idea that he expected or regarded himself entitled to extra compensation. The so-called overtime that he put in was treated by him and evidently regarded by his employer as incident to his employment. He was paid his salary in full, week by week, and when he signed the receipts therefor made no demand for extra compensation, and never intimated that he expected it until his employment ended. Then he brought forward his private memorandum account, and for the first time made demand for extra pay.

There is no implied promise on the part of the employer to pay extra compensation for work voluntarily performed outside of the usual hours to one who is regularly employed and paid by the week or month. That appellee did not himself regard his employer as under any contract liability is, we think, sufficiently shown by his conduct in keeping

a secret account, and making no mention of it to his employer until his employment was ended. If he had understood his contract as entitling him to extra pay for over hours, there would have been no need of secrecy in keeping this memorandum nor of postponing its presentation for more than a year, and until he left or was discharged. By continuing in his employment, working over the usual hours, when requested, without protest, and receiving the stipulated weekly wages, knowing, as his conduct shows he did, that his employer regarded it as full payment for his week's work, he accepted his employer's understanding of the contract as his own and waived all claim to additional compensation. Forster v. Green, 111 Mich. 264; Helpenstine v. Hartig, 5 Ind. App. 172. In the present case appellee seems to rely upon an express contract, which his own evidence and conduct show he himself did not regard as existing, and the course of dealing between the parties makes it apparent beyond controversy that neither party regarded the so-called overtime service as rendered under an implied contract for extra pay. As was said in Forster v. Green, above referred to, it would certainly be "rank injustice" to permit appellee, after a year's acquiescence in his employer's understanding of the contract, receiving and receipting weekly for his stipulated wages, " to assert a secret intention of making an additional charge."

Where there is a clear and explicit agreement that an employe shall receive a stated compensation for a specified number of hours' work per day or week, then, doubtless, there may sometimes arise an implied promise to pay for extra hours of service, given at the employer's express request. But no such case is here presented.

Appellee was tendered his last week's salary with a request to sign a receipt in full. The tender does not appear to have been made good, and appellee is entitled to a judgment for eleven dollars and fifty cents. Judgment for that amount will therefore be entered here in favor of appellee, and judgment against him for the costs in this court.

The judgment of the Circuit Court is reversed.